**William M. WHITE, Plaintiff–Appellant,**

v.

**Sergeant ROPER, Deputies Devin, Miller, O'Dowd, De La Pena, Willock, as day-shift employees at San Francisco County Jail no. 2, 7th Floor, 850 Bryant Street, San Francisco, California, Defendants–Appellees.**

**No. 89–15243.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 11, 1990 *.

Decided May 1, 1990.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Michael N. Burt, Deputy Public Defender, City and County of San Francisco, San Francisco, Cal., for plaintiff-appellant.

Geoffrey Spellberg, Deputy City Atty., San Francisco, Cal., for defendants-appellees.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

William M. White appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 action in favor of Sergeant Roper and Deputies Devin, Miller, O'Dowd, De La Pena, and Willock (collectively, "the deputies") of the San Francisco County Jail. White contends genuine issues of material fact exist as to his claims that Sergeant Roper was deliberately indifferent to White's personal safety while he was confined in jail, and that Sergeant Roper and the jail deputy defendants used excessive force in subduing White when he resisted being put into another inmate's cell. We affirm as to the excessive force claim, but reverse as to the deliberate indifference claim.

## FACTS

On February 13, 1986, White, a pretrial detainee at the San Francisco County Jail, was reassigned from his cell to a cell occu-

pied by inmate David Shaw. Sergeant Roper took White to Shaw's cell and ordered White to go inside. Shaw blocked the entrance to his cell, stating that he did not want anyone else in his cell. White then refused to enter Shaw's cell and backed away from the entrance, moving down the cell block corridor. After securing the entrance to Shaw's cell, Sergeant Roper and some of the deputies followed White, forcibly subdued him and, according to White, in subduing him caused him to suffer a cut wrist and "bruises all over his body."[1] Once White was subdued and placed in a nearby cell, Sergeant Roper returned to Shaw's cell and went inside. Shaw attacked Sergeant Roper and stabbed him with a homemade shank. Sergeant Roper had to be hospitalized for two weeks.

## DISCUSSION

We review de novo the district court's grant of summary judgment to Sergeant Roper and the deputies, viewing the evidence in the manner most favorable to White. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984). Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To avoid a grant of summary judgment to Sergeant Roper and the deputies, White cannot rely solely on the allegations in his pleadings. *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir.1978) (per curiam), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979). Rather, White must present some "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

Section 1983[2] requires a claimant to prove (1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988). It is not disputed whether Sergeant Roper and the deputies were acting under color of state law. The issue here is whether their conduct deprived White of a federally protected right; in this case, a right protected by the Constitution.

### A. *Deliberate Indifference to Safety*

The Supreme Court "has noted that the right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause ... [, a]nd that right is not extinguished by lawful confinement, even for penal purposes." *Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982) (citation omitted). We have stated that the "insufficient protection of a prisoner resulting in harm inflicted by other inmates may also violate the prisoner's due process rights." *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir.1988), *vacated on other grounds*, —— U.S. ——, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989).

---

1. All parties agree that Deputies De La Pena and Willock helped Sergeant Roper subdue White. The parties dispute whether Deputy Devin was involved. Deputy O'Dowd claims he was present but did not participate in subduing White. White claims he does not know whether Deputy O'Dowd was involved. White does not contend that Deputy Miller was involved.

2. The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

White contends that Sergeant Roper was deliberately indifferent to White's physical safety in trying to force him inside Shaw's cell.[3] White contends that Sergeant Roper had reason to know that Shaw was a threat to White. White alleges the following set of facts: Sergeant Roper led White to the entrance of Shaw's cell. Shaw blocked the entrance, telling Sergeant Roper that no one was coming into his cell. White saw Shaw brandish a long pen or pen-like weapon. White warned Sergeant Roper about the weapon, stating that it looked like Shaw would attack White with it. However, Sergeant Roper ignored the warnings and tried to force White into the cell.

White's version of the facts is corroborated by statements of other prisoners who witnessed the scene. One prisoner claims that he saw Shaw's weapon at the time of the incident, and that he had seen Shaw brandishing the weapon on previous occasions. (As we noted earlier, Shaw did in fact have a homemade shank, which he used in his attack on Sergeant Roper.) Another prisoner says he heard Shaw threaten to kill anyone put in his cell. Despite this threat, and White's protests, Sergeant Roper tried to force White into the cell.

White also contends that Shaw's jail classification card and file indicate that Shaw had a history of violent behavior. The card reveals that, prior to the incident with White and Sergeant Roper, Shaw had assaulted at least one other prisoner, had threatened several deputies, and had attempted suicide. Shaw's file includes a report that less than one month before the incident with White and Roper, Shaw threatened to stab a sergeant at the jail with a "black ink pen." Shaw's file further reveals that he had formally requested to be left in a cell by himself, writing, "[P]lease, I ask for your understanding [and] thought on this matter. I AM AN CAPITAL CASE!"

Sergeant Roper claims that he did not know Shaw had a weapon. He reasons that, had he known Shaw was armed, he would not have entered Shaw's cell alone once White had been subdued. The district court accepted this reasoning, and used it as a basis for the grant of summary judgment on this claim in Sergeant Roper's favor. However, it is also reasonable to infer from these facts that Sergeant Roper knew Shaw was armed but failed to follow proper procedures to disarm him. Alternatively, it would be reasonable to infer that, even if Sergeant Roper did not know Shaw was armed, he was deliberately indifferent as to whether Shaw would attack White once White was inside Shaw's cell.

Our analysis would be similar under an "intent to punish" framework. The Supreme Court has held that, "under the Due Process Clause, a [pretrial jail] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Absent a showing of an express intent to punish, whether a particular action taken by jail officials amounts to punishment "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 538, 99 S.Ct. at 1874 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963) (footnote omitted)) (brackets in original).

A challenged action which is reasonably related to a legitimate government objective will not, without more, constitute punishment. *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874. Conversely, a court may infer an intent to punish when there is no such reasonable relation. *Id.* Legitimate government goals include effective management of the jail and maintenance of internal jail security and order. *Id.* at 540, 99 S.Ct. at 1874. "Retribution and deter-

---

**3.** We recently held that "jail officials' conduct toward pretrial detainees must reach the level of deliberate indifference before a section 1983 claim can be stated based upon a violation of the detainee's due process right to personal security under the fourteenth amendment." *Redman v. County of San Diego,* 896 F.2d 362, 365 (9th Cir.1990).

rence are not legitimate nonpunitive governmental objectives." *Id.* at 539 n. 20, 99 S.Ct. at 1874 n. 20.

White contends that Sergeant Roper transferred him to Shaw's cell to punish him. White asserts that, on the day of the transfer, the following occurred: one of White's cell mates swore at Sergeant Roper behind his back. Sergeant Roper mistakenly believed it was White who had sworn at him. In retaliation, Sergeant Roper harassed White by taking White's sweatshirt from him, and Sergeant Roper also threatened him by saying: "You're going to get yours." Soon thereafter, Sergeant Roper tried to put White into Shaw's cell.

In response to White's allegations, Sergeant Roper claims that he reassigned White to Shaw's cell to maintain jail discipline. Sergeant Roper alleges that White had become uncooperative and abusive, and that White was trying to become "cell boss" over his fellow inmates. Because both White and Shaw were being detained on multiple murder charges, Sergeant Roper contends that he believed neither one could intimidate the other.

On its face, the challenged transfer is reasonably related to the legitimate goal of maintaining order in the jail. Yet, according to the evidence put forward by White, the transfer may have been punishment for the swear words Sergeant Roper thought White used against him. Whether Sergeant Roper tried to punish White, or simply transfered him for legitimate penological purposes, turns on Sergeant Roper's intent.

Where the defendant's intent is at issue, summary judgment is appropriate "only if all reasonable inferences defeat the plaintiff's claims." *SEC v. Seaboard Corp.*, 677 F.2d 1297, 1299 (9th Cir.1982); *see also Braxton–Secret v. A.H. Robins Co.*, 769

F.2d 528, 531 (9th Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2730, at 238 (2d ed. 1983). One reasonable inference from the facts alleged is that Sergeant Roper intended to punish White. A reasonable jury could infer such an intent from Sergeant Roper's alleged harassment and threat against White and his determination to force White into Shaw's cell despite Shaw's threats and White's protests.

Sergeant Roper argues that even if it were reasonable to infer from the foregoing evidence that Sergeant Roper was deliberately indifferent to White's personal safety or that he intended to punish White, the grant of summary judgment in favor of Sergeant Roper was appropriate because White was never placed in Shaw's cell and was not injured by Shaw. This argument misses the mark. White's contention is not that he was injured by Shaw, but that he was injured by the force used by Sergeant Roper and the deputies to subdue him after he backed away from Shaw's cell. Sergeant Roper can be held liable for these injuries if his attempt to force White into Shaw's cell set "in motion a series of acts by others" which Sergeant Roper knew or should have known "would cause others to inflict the constitutional injury."[4] *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.1978).

To prevail and recover damages on his section 1983 claim under either a deliberate indifference or an intent to punish theory, White must prove that Sergeant Roper's actions were both the actual and the proximate cause of White's injuries. *Leer*, 844 F.2d at 634. Sergeant Roper's conduct is an actual cause of White's injury only if the injury would not have occurred "but for" that conduct. *See* W. Prosser & W. Keeton, *The Law of Torts* [hereinafter "Prosser & Keeton"] § 41, at 266 (5th ed. 1984). Here, it is reasonable to infer that, but for Sergeant Roper's attempt to move White into Shaw's cell, White would not have retreated down the corridor and been

---

**4.** The force used on White need not have been excessive to satisfy the damage element of White's deliberate indifference claim. White alleges that he suffered a cut wrist and "bruises all over his body." We discuss the question of the amount of force used in the context of White's excessive force claim hereafter in part B.

subdued by Sergeant Roper and the deputies. Thus, Sergeant Roper's conduct was at least one of the actual causes of White's alleged injury.

The requirement of actual cause is a "rule of exclusion." *Id.* "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury." *Id.*, § 42, at 272–73 (footnote omitted). This question is generally referred to as one of proximate cause.

Sergeant Roper's conduct is not the proximate cause of White's alleged injuries if another cause intervenes and supersedes his liability for the subsequent events. *See* Restatement (Second) of Torts [hereinafter "Restatement"] §§ 440–53 (1965). One other cause of White's alleged injuries was White's refusal to enter Shaw's cell and his movement down the cell block corridor. But for this conduct, Sergeant Roper and the deputies would not have had to subdue White, and White would not have suffered the injuries he alleges. White's conduct, then, is an intervening cause of his alleged injuries.

Whether White's conduct, as an intervening cause of his alleged injuries, supersedes Sergeant Roper's liability for the results of his own conduct depends upon what was reasonably foreseeable to Sergeant Roper at the time. "The courts are quite generally agreed that [foreseeable] intervening causes ... will not supersede the defendant's responsibility." Prosser & Keeton, *supra*, § 44, at 303–04. Courts look to the original foreseeable risk that the defendant created. *Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 662 (9th Cir. 1988) (citing Prosser & Keeton, *supra*, § 44, at 302). When one person's conduct threatens another, "the normal efforts of the other ... to avert the threatened harm are not a superseding cause of harm result-

ing from such efforts," so as to prevent the first person from being liable for that harm. Restatement, *supra*, § 445.

■ Here, White's conduct supersedes Sergeant Roper's conduct as the proximate cause of White's alleged injuries only if it was not within the original foreseeable risk that Sergeant Roper created and did not constitute "normal efforts" to avert the threatened harm. "The issue as to whether a described consequence was 'foreseeable,' ... and the issue as to whether an intervening force was 'abnormal' are to be decided as issues of fact are decided." Prosser & Keeton, *supra*, § 45, at 320. If reasonable persons could differ, summary judgment is inappropriate and the question should be left to a jury. *See id.;* Restatement, *supra*, § 453, comment b.

In this case, a reasonable jury could conclude that White's conduct was a foreseeable and normal result of Sergeant Roper's attempt to place him in Shaw's cell. When Sergeant Roper did not respond to Shaw's threat, or to White's warning that Shaw might be armed, White had only two alternatives: enter Shaw's cell and risk being injured by Shaw, or run away and risk being injured by the jail guards. A reasonable jury could conclude that the injury White suffered from choosing the latter alternative was foreseeable to Sergeant Roper. The question of proximate cause should have been left to the jury.

Because we conclude that genuine issues of fact remain as to whether Sergeant Roper was deliberately indifferent to Shaw's personal safety or intended to punish White, and as to whether this conduct proximately caused the injuries White has alleged, summary judgment on this claim was inappropriate.

**B.** *Excessive Force*

■ White contends that Sergeant Roper and Deputies De La Pena, Willock, and Devin [5] used excessive force in subduing

---

**5.** White does not allege that Deputy Miller personally participated in or caused the application of force, or omitted to perform any act he had a duty to perform. Nor has White introduced any

evidence that Deputy O'Dowd was involved. Therefore, White has not raised a genuine issue that either Deputy Miller or Deputy O'Dowd has subjected him to a deprivation of a constitution-

him after he backed away from Shaw's cell. We have stated that "egregious government conduct in the form of excessive and brutal use of physical force constitutes a violation of substantive due process" cognizable under section 1983. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir.) (emphasis deleted), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *see also Gaut v. Sunn*, 810 F.2d 923, 924 (9th Cir.1987) (per curiam) ("[p]rison beatings which 'shock the conscience' are actionable under section 1983"). "[R]esolving a substantive due process claim requires courts to balance several factors focusing on the reasonableness of the officers' actions given the circumstances." *Smith*, 818 F.2d at 1417. These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *Id.; see also Gaut*, 810 F.2d at 924 (listing these same factors); *Hoptowit v. Ray*, 682 F.2d 1237, 1251 (9th Cir.1982) ("guards may use force only in proportion to the need in each situation").

White does not dispute that he refused to enter Shaw's cell and backed away from Sergeant Roper, moving down the cell block corridor. Even if White did so to avoid being injured by Shaw, his actions created a need for Sergeant Roper and the deputies to apply reasonable force to control him. The amount and type of force used is disputed by the parties. However, White has not shown that he required or even that he requested medical treatment for the cut wrist and the bruises he allegedly suffered. White does not allege that he lost consciousness at any time, or that he suffered any permanent injury. We conclude that White has not made a showing sufficient to establish that the use of force against him was "excessive" or "brutal." The district court properly granted summary judgment on this claim.

al right, cognizable under section 1983. *See Johnson*, 588 F.2d at 743 (a section 1983 plaintiff must show that the defendant personally participated in or caused the harmful conduct,

## CONCLUSION

Genuine issues of fact exist which preclude summary judgment on White's deliberate indifference claim, a claim which we have also considered in the context of an intent to punish analysis. Thus, on this claim the district court's summary judgment is reversed.

As to White's excessive force claim, we have concluded that the force used, while allegedly resulting in injuries to White sufficient to satisfy the injury element of his deliberate indifference claim, was not excessive. Accordingly, the district court's summary judgment in favor of all of the defendants on White's excessive force claim is affirmed.

Each party shall bear his own costs for this appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

WIGGINS, Circuit Judge, dissenting:

I dissent.

It must be especially remembered that White seeks damages because of injuries sustained by him as the result of "force used by Sergeant Roper and the deputies to subdue him after he backed away from Shaw's cell." Maj.Op. p. 3597. No claim is made for injuries as a result of being forced into Shaw's cell or from Shaw.

The circumstances surrounding the attempted placing of White into Shaw's cell are relevant to White's claim for damages only insofar as those circumstances might explain and perhaps justify White's backing away from the cell. But those circumstances do not justify White's remaining at large and out of control within the prison. The officers had a duty to retake custody of White. White had no right to resist being retaken into custody and to the extent that he did so, the officers had the right to use reasonable force to accomplish this lawful objective.

or that the defendant's failure to perform an act he was legally required to perform caused the harm).

The majority claims that White is entitled to present to a jury the questions of whether Sergeant Roper knew or should have known (1) that attempting to force White into Shaw's cell would cause White to resist; (2) that in resisting White might "back away," compelling the prison guards to recapture him; and (3) that the use of force to do so might produce injury to White. These questions are based upon a tenuous string of suppositions that are too weak to hold White's case together. They do not constitute genuine issues of fact sufficient to defeat summary judgment.

There can be no question that the prison guards had a duty to retake control of White after he backed away from Shaw's cell. They exercised only reasonable force in doing so. White was injured as a result of the application of this reasonable force. Because I believe that he suffered no constitutional injury in the process, I respectfully dissent.