**Jerardo RODRIGUEZ, Plaintiff,**

v.

**Director of Oregon State Prisons John DOE; S. Frank Thompson, Superintendent, Oregon State Penitentiary; H.O. Myers, Defendants.**

**No. CV 95–6098–PA.**

United States District Court,
D. Oregon.

March 15, 1996.

Jerardo Rodriguez, Salem, OR, pro se.

Theodore R. Kulongoski, Attorney General, Jan Peter Londahl, Assistant Attorney General, Department of Justice, Salem, Oregon, for Defendants.

## OPINION

PANNER, District Judge.

Plaintiff Jerardo Rodriguez, an inmate at Oregon State Penitentiary (OSP), brings this 42 U.S.C. § 1983 action against defendant OSP Superintendent Frank Thompson and other Oregon Department of Corrections (DOC) officials and employees. Although plaintiff raised several claims in his Amended Complaint, I dismissed all but one in an earlier Order. *Rodriguez v. Thompson, et al.,* No. CV–95–6098, Minute Order (D.Or. Oct. 18, 1995). Remaining is plaintiff's claim that his placement in OSP's Intensive Man-

agement Unit (IMU) violated his rights under the Due Process Clause. Defendants move for summary judgment. I grant the motion.

## BACKGROUND

According to the undisputed affidavit of Gary Weeber, a Program Manager with the DOC's Classification and Transfer Division, all Oregon inmates are assigned custody levels which determine the amount of supervision the inmate requires. The DOC Administrative Rules governing classification of inmates are found in OAR 291–104–005 through 291–104–035. Custody classification levels are reviewed at a minimum of every six months or more often if requested or necessary. A major disciplinary misconduct can trigger a custody classification review.

An inmate's classification is determined by scoring both the inmate's public risk and institution risk and applying these to a custody classification matrix. The public risk score is determined by answering seven questions regarding the inmate's crime severity, the extent of violence in commission of crimes, whether a weapon was used, the inmate's history of violence, the inmate's escape history, the amount of time left on the inmate's sentence, and whether there are any felony detainers. Each answer to each question receives a certain point value. The total is the inmate's public risk score.

The institutional risk score is determined by answering six questions regarding the inmate's frequency of institutional misconduct, the time element and severity of the institutional misconduct, the inmate's program and work history, the inmate's gang affiliation, the inmate's substance abuse, and the inmate's age. As with the public risk score, each answer to each question is assigned a point value. The total is the inmate's institutional risk score.

The public risk score and institutional risk score are applied to the Classification Custody Matrix to determine the inmate's security classification or custody supervision level. Supervision levels at OSP are minimum, medium, close, and maximum. Overrides of the initial classification level can occur with the inmate eventually classified in a higher or lower security level. An inmate classified as maximum custody is one that represents an extreme risk of escape or violence, or of disruption of the safe, secure and orderly operation of the correctional facility.

Maximum custody inmates may be housed in one of several special housing units including Death Row, Special Management Unit (SMU), Administrative Segregation, Infirmary, Disciplinary Segregation (DSU), or the Oregon State Hospital. All male maximum custody inmates who are not assigned to one of these special housing units are assigned to the IMU which is designed and staffed to provide the greatest level of custodial care and supervision for the highest risk inmates.

Assignment to IMU is not automatic but results from a recommendation from the inmate's counselor based on the point system and matrix formula described above. If the counselor recommends IMU placement, the counselor's supervisor submits a "review packet" to the Classification and Transfer Section for approval. The packet includes the administrative transfer request, the current classification summary, the inmate's misconduct record, any relevant hearings officer's findings, and any unusual incident reports or documents to support the maximum custody recommendation. A copy of the official classification summary is provided to the inmate. The maximum classification is not final until approved by a Program Manager of the Classification and Transfer Section. The Program Manager can override the maximum classification for various reasons.

Inmates may appeal a classification decision. OAR 291–104–033. While inmates housed in IMU are not permitted to appear in person before the classification committee, they may, in writing, dispute an override or contest the accuracy of the information used in completing the classification summary. OAR 291–104–035(2). Decisions regarding classification appeals are rendered within fifteen days of receiving the inmate's review request. OAR 291–104–035(2)(a)(A), (B), (2)(b), and (2)(c).

On July 22, 1994, plaintiff was issued a misconduct report for violation of inmate rules regarding contraband and possession of

a dangerous or deadly weapon or escape device. After a disciplinary hearing, the charges against plaintiff were sustained and he was sanctioned to 120 days in disciplinary segregation for the offense. He was also assessed a fine and had fourteen days of loss of privileges.

Before the misconduct in 1994, plaintiff had a public risk score of 91 and an institutional risk score of 54. He had been classified as medium custody. Because of the major rule misconduct violation, OSP staff reviewed plaintiff's custody classification. The major disciplinary misconduct raised plaintiff's institutional risk score to 90. At the same time, his public risk score increased to 124 because he had received a detainer for a Class A or B Felon. When applied to the matrix, the public risk score of 124 and the institutional risk score of 90 placed him in maximum custody. Upon release from DSU, IMU was determined to be appropriate housing for plaintiff because he was considered a serious management concern. Plaintiff was transferred from DSU to IMU on November 18, 1994.

According to Weeber, a serious management concern means participation either individually, or in a group, in behavior which poses a threat to the safe and secure operation of the facility, including, but not limited to, threatening or inflicting serious bodily harm on inmates or staff, posing an immediate risk of escape, promoting or engaging in disruptive behavior, promoting gang activities, or being involved in the planning of any activities that would significantly threaten the safe and secure operation of the facility. An inmate with a serious management concern poses a sufficient threat such that his behavior can only be adequately controlled in appropriate special housing.

Weeber states that plaintiff is considered a serious management concern because he had in his possession a weapon capable of causing death or serious physical injury. In addition, he had committed more than five major disciplinary violations in the past four years.

On June 2, 1995, plaintiff was released from IMU and reassigned to Administrative Segregation.

## STANDARDS

The court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court should resolve reasonable doubts about the existence of a material factual issue against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

## DISCUSSION

■ Plaintiff seeks both injunctive relief and compensatory damages. Now that he has been released from IMU, his claims for injunctive relief are moot. *See Dilley v. Gunn,* 64 F.3d 1365, 1368 (9th Cir.1995) (inmate's release from prison while claims are pending moots claims for injunctive relief).

■ As to his claims for compensatory damages, plaintiff must first demonstrate that he possesses a liberty interest in remaining free from placement in IMU and then must prove that he did not receive all the process that he was constitutionally due.

■ A liberty interest may arise from the Due Process Clause itself or may be created by state law. *Smith v. Noonan,* 992 F.2d 987, 989 (9th Cir.1993). Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. *Hewitt v. Helms,* 459

U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement); *McFarland v. Cassady,* 779 F.2d 1426, 1427–28 (9th Cir.1986) (Due Process Clause does not give an inmate a liberty interest in remaining in the general population); *see also Smith,* 992 F.2d at 989 (no liberty interest under the Due Process Clause to be free from administrative segregation); *Clark v. Brewer,* 776 F.2d 226, 228–30 (8th Cir.1985) (Due Process Clause itself does not create a liberty interest notwithstanding the fact that conditions in "close management" are significantly more harsh than the conditions in the general population).

■ In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court recently changed the analysis used to determine whether a state has created a protected liberty interest entitling an inmate to the procedural protections of the Due Process Clause. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. The focus is no longer on the language of prison regulations to determine whether such regulations place substantive restrictions on an official's discretion. *See, e.g., Mujahid v. Meyer,* 59 F.3d 931, 932 (9th Cir.1995). Instead, the court looks to the particular discipline imposed and asks whether it "present[s] the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* (quoting *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300).

■ In a recent case, the Ninth Circuit concluded that the question of whether placement in disciplinary segregation imposes an atypical and significant hardship on an inmate requires an examination of "the various custodial conditions at the particular prison in question." *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995), *petition for cert. filed,* No. 95–1385 (Feb. 26, 1996). Defendants argue that placement in IMU does not impose an atypical and significant hardship on an inmate. However, I need not conduct the custodial condition inquiry required by *Gotcher* because, as explained below, even assuming that plaintiff has a state created liberty interest in avoiding IMU placement,

he received all the process he was constitutionally due.

Nonpunitive placement in IMU requires only an "informal nonadversary review of the information supporting [plaintiff's IMU placement], including whatever statement [plaintiff] wished to submit, within a reasonable time after confining him to [IMU]." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871–72; *see also Mendoza v. Blodgett,* 960 F.2d 1425, 1431 (9th Cir.1992) (to comport with due process, placement in dry-cell watch required notice and opportunity to respond in writing within a reasonable time), *cert. denied,* 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993); *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir.1986) (placement in segregation for administrative reasons requires only notice to prisoner, opportunity for prisoner to submit information, and nonadversary review of information supporting placement), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Sacre v. Maass,* No. CV–92–887–JO, Opinion at 11 (D.Or. Aug. 6, 1993) (nonpunitive placement in OSP's IMU requires notice, right to make a statement, and nonadversary review of information supporting placement within a reasonable time).

As noted above, it is undisputed that inmates receive notice of all official classification actions and may appeal classification decisions. Responses to appeals are made within fifteen days. Thus, regulations governing the nonpunitive transfer of inmates into IMU satisfy the requirements of the Due Process Clause.

Defendants assert that plaintiff's placement into IMU was for nonpunitive, administrative reasons. As stated in more detail above, they maintain that plaintiff, who is considered a serious management concern, poses a sufficient threat such that his behavior can only be adequately controlled in appropriate special housing. Although plaintiff's misconduct history is a large part of the basis for his institutional risk matrix score, that in and of itself does not make his IMU placement a punitive one. Plaintiff served 120 days in DSU as the punitive sanction for his misconduct. The fact that plaintiff has had continuous problems with his institution-

al conduct suggests that he needs more intensive management to preserve the security and order of the institution. Placement in IMU is intended to address this need and is not intended as a punitive measure.

 "Absent a showing of an express intent to punish, whether a particular action taken by [prison] officials amounts to punishment generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *White v. Roper*, 901 F.2d 1501, 1504 (9th Cir.1990) (internal quotations omitted). Thus, "[a] challenged action which is reasonably related to a legitimate government objective will not, without more, constitute punishment." *White*, 901 F.2d at 1504. Legitimate government objectives include effective prison management and internal prison security and order. *Id.*

Despite being given an extension of time, plaintiff offers no evidence in response to defendants' motion. Plaintiff fails to show that, contrary to the articulated purposes for the OSP classification system in general, and plaintiff's placement in IMU in particular, placement in IMU is used for punitive purposes. Thus, there is no genuine issue of material fact as to whether plaintiff's placement in IMU constitutes "punishment." It does not. Because plaintiff's placement in IMU has a legitimate government objective that is nonpunitive, he received all the process he was constitutionally due.

## CONCLUSION

Defendants' motion for summary judgment (# 16) is granted.