NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HECTOR A. HERNANDEZ and MARIA
IBARRA as co-successors-in-interest for
Decedent, HECTOR HERNANDEZ,

　　　　Plaintiffs - Appellants,

　v.

COUNTY OF ALAMEDA, et al.,

　　　　Defendants - Appellees.

No. 23-15246

D.C. No.
4:20-CV-02884-HSG

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted September 13, 2024
San Francisco, California

Before: BYBEE, BEA, and MENDOZA, Circuit Judges.
Partial Dissent by Judge BYBEE.
Partial Dissent by Judge MENDOZA.

Plaintiffs appeal the district court's order granting summary judgment to

Defendants on Plaintiffs' federal claims and denying them leave to file a second

amended complaint. The parties are familiar with the facts, so we do not recount

them here.

　　　* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review grants of summary judgment and denials of motions for leave to amend based on futility *de novo*. *See Johnson v. Barr*, 79 F.4th 996, 999 (9th Cir. 2023); *Carvalho v. Equifax Info Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010). For the following reasons, we affirm in part and reverse and remand in part.

1.     Plaintiffs first argue that a genuine dispute of material fact exists as to whether Defendants' deliberate indifference caused Hector Hernandez ("Hernandez") to suffer an injury short of death. Specifically, Plaintiffs contend that the individual medical provider Defendants and California Forensic Medical Group ("CFMG") were deliberately indifferent to Hernandez's unintentional weight loss, which caused him to endure further weight loss resulting in physical pain and emotional suffering.

Because Plaintiffs' claim requests relief under 42 U.S.C. § 1983, and § 1983 is silent on the measure of damages, California's law regarding pre-death pain and suffering damages governs, unless inconsistent with the policies of § 1983. 42 U.S.C. § 1988(a); *see Robertson v. Wegmann*, 436 U.S. 584, 589–90 (1978). We have recognized claims that involuntary weight loss causes physical and emotional pain and suffering under § 1983. *See Foster v. Runnels*, 554 F.3d 807, 813 n.2 (9th Cir. 2009). Because all inferences must be drawn in favor of Plaintiffs as the non-

2

moving party, there is evidence supporting a finding that Hernandez, due to his involuntary weight loss, experienced physical and emotional pain and suffering.[1]

California's survival of causes of action statute eliminates pre-death pain and suffering damages recovery by the victim's statutory heirs. *See* Cal Civ. Code § 377.34. However, we held in *Chaudhry v. City of Los Angeles* that "California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy. Section 377.34 therefore does not apply to § 1983 claims where the decedent's death was caused by the violation of federal law." 751 F.3d 1096, 1105 (9th Cir. 2014). Accordingly, Plaintiffs' claim requesting pain and suffering damages related to Hernandez's unintended and involuntary weight loss survives Hernandez's death.

In sum, assuming without deciding that Defendants were deliberately indifferent, a genuine dispute of material fact exists as to whether Defendants'

---

[1] While the dissent attempts to distinguish *Foster*, we find this unpersuasive. Like here, *Foster* was a case appealed from summary judgment. We recognized there that "[b]ecause all inferences must be drawn in Foster's favor, it should be presumed that the meals Foster was provided were inadequate to maintain health and that he has suffered a cognizable harm under the Eighth Amendment." *Foster*, 554 F.3d at 813 n.2. Though Hernandez did not complain of headaches or dizziness, we can draw the reasonable inference that Hernandez was suffering at least some type of discomfort in relation to his involuntary weight loss. Something clearly bothered Hernandez, so much so that he requested medical assistance three times. Of course, we cannot ask Hernandez if he was feeling any other discomfort related to his weight loss as he has passed away. But whether Hernandez suffered other ailments relating to his involuntary weight loss bears only on the size of damages to which Plaintiffs are entitled.

3

caused Hernandez to suffer involuntary weight loss, which caused him pain and suffering. And damages for that harm are not foreclosed as a matter of law. As such, we reverse and remand on this issue.

2.     Plaintiffs next appeal the district court's finding that no genuine dispute of material fact existed as to whether Defendants caused Hernandez's death. Plaintiffs particularly challenge the district court's conclusion that undiagnosed and untreated chronic kidney disease, for which unintentional weight loss was a symptom, was not the cause of Hernandez's death.

Plaintiffs' primary expert on causation, Dr. Bennett Omalu, opined that: (1) Hernandez died of sudden cardiogenic death resulting from chronic kidney disease; (2) unintentional, unexplained weight loss is a symptom of approximately twenty-five conditions, including dementia, diabetes, cancer, and chronic kidney disease; and (3) had Defendants investigated Hernandez's unintentional weight loss, he would not have died at his age from chronic kidney disease. The problem with Plaintiffs' case, and Dr. Omalu's opinion, is that it fails to connect the dots.

Nothing in the record establishes that if Defendants had more thoroughly investigated Hernandez's weight loss, they would have discovered his chronic kidney disease. Further, if they had discovered it, there is no proof that it would have been treatable. If it had been treatable, there is no proof that treatment would likely have prevented his death. Plaintiffs bore the burden of putting forth evidence

4

to overcome summary judgment by creating a genuine dispute of material fact as to causation. They failed to do so. We agree with the district court that Plaintiffs failed to establish a genuine dispute regarding whether Defendants caused Hernandez's death.

3.     Plaintiffs next challenge the district court's dismissal of their loss of familial relationship claim. The parties agree that this claim rises or falls with Plaintiffs' deliberate indifference action. Because we reverse on part of Plaintiffs' deliberate indifference claim, we also reverse and remand for further proceedings on their familial association claim to the extent it relies upon injuries short of death.

4.     Lastly, Plaintiffs appeal the denial of their motion for leave to amend their complaint. Though we reverse on part of Plaintiffs' deliberate indifference allegations, amendment related to that theory is still futile. The district court noted at the hearing on the motion for summary judgment that Plaintiffs conceded that the factual record would be the same, regardless of the proposed amendments to the complaint. Applying the summary judgment standard, the district court held that no reasonable jury could find Deputy Han was deliberately indifferent to Hernandez's medical needs. For a prison official to be deliberately indifferent to a medical need, he must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts for which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*

*v. Brennan*, 511 U.S. 825, 837 (1994). The "plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon v. Cnty. of Orange*, 88 F.3d 1118, 1125 (9th Cir. 2018).

As it stands, the record does not contain any evidence to prove that a reasonable official in Deputy Han's position should have known of Hernandez's medical condition. Deputy Han, a corrections officer who is not medically trained, had no reason to know that Hernandez was suffering from some underlying health condition. Moreover, the record contains no evidence suggesting that Deputy Han was deliberately indifferent to Hernandez's involuntary weight loss. Accordingly, we affirm the district court on this ground.

**AFFIRMED in part; REVERSED and REMANDED in part.**

*Hernandez v. County of Alameda*, No. 23-15246

BYBEE, J., dissenting in part:

Although I agree that the district court did not err by granting summary judgment on Plaintiffs' deliberate indifference claim relating to Hernandez's death or by denying leave to amend the complaint, I disagree that reversal is warranted for Hernandez's injuries short of death. Because Plaintiffs' familial relationship claim relies on deliberate indifference, I would affirm on all grounds, including denying leave to amend because it is futile.

The majority points to *Foster v. Runnels* for the proposition that we have held that involuntary weight loss is an injury. 554 F.3d 807, 813 n.2 (9th Cir. 2009). But that distinguishable opinion offers little support for the majority's decision. In *Foster*, corrections officials denied Foster sixteen meals over a twenty-three-day period for a behavioral issue. *Id.* at 813. As a result, Foster lost weight, which caused headaches and dizziness. *Id.* We found that, under those circumstances, involuntary weight loss was an injury. *Id.* But, in so holding, we acknowledged that "[a]lthough food is a basic human need, the Eighth Amendment 'requires only that prisoners receive food that is adequate to maintain health.'" *Id.* at 813 n.2.

Here, the facts are different from *Foster*. There is no allegation that Hernandez endured headaches, dizziness, lightheadedness, or any other symptom beyond weight loss. Furthermore, Hernandez's body mass index ("BMI") remained in a healthy range for the entire relevant period and a dietician confirmed that his

diet was sufficient, which would appear to likely satisfy the requirement that he "receive food that is adequate to maintain health." *See id.* Consequently, the majority's reliance on *Foster* is misplaced.

Because we have never acknowledged that involuntary weight loss alone is a cognizable injury and this is not the case to do so, I respectfully dissent. I would affirm.

FILED

OCT 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Plaintiffs allege that Hector Hernandez suffered and died because Defendants were deliberately indifferent to his medical needs. The district court granted summary judgment because, in its view, Plaintiffs failed to present evidence of causation. I join the majority in finding sufficient evidence that Defendants' deliberate indifference caused Hernandez pain and suffering before he died, and reversing to that end.[1] But because the record also contains sufficient evidence that Defendants' deliberate indifference caused Hernandez to die, I respectfully dissent insofar as the majority affirms summary judgment on that claim.

1. Beginning with what is not at issue: The district court found sufficient evidence to "create a triable issue of fact" as to whether (1) Hernandez "had a serious medical need (unintended weight loss), (2) a reasonable official in [Nurse] Lebon's position should have been aware of it, and (3) [California Forensic Medical Group, Inc. ("CFMG")] staff did not take reasonable available measures to further evaluate the cause of his weight loss." *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (listing elements of a pretrial detainee's medical care claim against an individual defendant).

---

[1] I also join the majority in affirming denial of leave to amend to add Deputy Han as a defendant.

The district court granted summary judgment solely on the final element of Plaintiffs' claim against Lebon and CFMG: that "by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* Plaintiffs alleged Hernandez's death as an injury. Plaintiffs argued below that Hernandez died because CFMG failed to provide proper care by failing to address his rapid weight loss, that "[t]he end result of untreated weight loss is death[,]" and that "because his unintended weight loss went untreated, decedent suffered a cardiac event, which ultimately killed him[.]"[2]

2. The majority affirms on causation of death but does not explain the relevant law on causation. Maj. at 4-5. Beginning with the statute, "Section 1983 imposes liability on '[e]very person who . . . subjects, or causes [a plaintiff] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Peck v. Montoya*, 51 F.4th 877, 888–89 (9th Cir. 2022) (alterations in original) (quoting 42 U.S.C. § 1983). "To meet [Section 1983's] causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169–70 (9th Cir. 2023) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)). "A defendant's 'conduct is an actual cause,' or cause-in-fact, 'of [a

---

[2] The district court confusingly reduces Plaintiffs' "theory" down to "Mr. Hernandez died from untreated weight loss and chronic kidney disease." The majority appears to mirror this framing. Maj. at 4-5. The record below does not indicate that Plaintiffs were so specific and, as explained herein, they do not need to be.

plaintiff's] injury only if the injury would not have occurred 'but for' that conduct." *Id.* at 1169 n.11 (quoting *White v. Roper*, 901 F.2d 1501, 1505–06 (9th Cir. 1990)). "[S]ection 1983 'creates a species of tort liability' that incorporates common-law tort principles." *Peck*, 51 F.4th at 891 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). "Courts therefore 'turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field.'" *Id.* (quoting *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989)).

Turning to the common law, California courts allow plaintiffs to demonstrate "but for" causation through a "substantial factor test," found in the Restatement (Second) of Torts § 432. *Viner v. Sweet*, 70 P.3d 1046, 1051 (Cal. 2003); *see also Uriell v. Regents of Univ. of Cal.*, 184 Cal. Rptr. 3d 79 (Cal. Ct. App. 2015). The substantial factor test is: "if two forces are actively operating . . . and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about." *Viner*, 70 P.3d at 1051 (quotation marks omitted).

Finally, we have instructed that "'[i]f reasonable persons could differ' on the question of causation then 'summary judgment is inappropriate and the question should be left to a jury.'" *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1080 (9th Cir. 2013) (quoting *White*, 901 F.2d at 1506). "As a practical matter, plaintiffs who have already demonstrated a triable issue of fact as to whether prison

officials exposed them to a substantial risk of harm, and who actually suffered precisely the type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to causation." *Id.* at 1080–81. In the context of a deliberate indifference case, we upheld a jury finding that a defendant "caused" injuries by simply "failing to take reasonable measures to address the risk" those injuries would occur. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc). And "[c]ausation is an intensely factual question that should typically be resolved by a jury." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) (citing *White*, 901 F.2d at 1505-06; Restatement § 434(2)).[3]

3. The first and most obvious path to causation supported by the evidence is that Hernandez's rapid weight loss contributed to his death. Dr. Omalu testifies that "the point at which unintended/unexplained weight loss becomes a critical medical concern that requires critical medical evaluation is when an individual loses more than 5% of the body weight within six to twelve months." Hernandez lost 8% in two months. Dr. Omalu explained "that the rate of unintentional/unexplained weight loss increases the risk of death for all-cause mortality and may be an[] index

---

[3] In the context of a medical negligence case, we have instructed that, "[g]iven the difficulties in establishing a medical cause and effect relationship, '[c]ausation can be proved even when we don't know precisely how the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage somehow." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014).

for the risk of death if left untreated." In short, no matter what specific disease ultimately killed Hernandez, an expert explained that losing weight at a rapid pace increased his risk of death.

Under a substantial factor test, a reasonable jury could conclude from this evidence that Hernandez's weight loss—the very thing Lebon saw and chose not to address—increased the chance Hernandez would die. In other words, the weight loss itself was a substantial factor in his death. *See Viner*, 70 P.3d at 1051. Under *Lemire*, this evidence alone should indicate that Appellants will "be able to demonstrate a triable issue of fact as to causation." *Lemire*, 726 F.3d at 1080–81 (quoting *White*, 901 F.2d at 1506). The majority finds that Dr. Omalu "fail[ed] to connect the dots." Maj. at 4. To the contrary, Dr. Omalu plainly connected the weight loss "dot" to the increased risk of death "dot." I do not think more is necessary for Plaintiffs' claim to survive summary judgment.

4.     The second path to causation is more winding but no less supported by record evidence. Plaintiffs presented evidence that if Nurse Lebon adequately evaluated and treated Hernandez's weight loss (if she was not deliberately indifferent), she would have discovered the cause of the weight loss and his death would have been prevented. Dr. Swaby opines that Hernandez's weight loss was a "[r]ed flag" that could be caused by "multiple common medical diagnoses, many of which are life threatening if not diagnosed and treated in a timely and appropriate

manner." Dr. Swaby's rebuttal report concurs with Dr. Omalu's cause of death opinion and concludes that "[h]is death was thus preventable and avoidable." Dr. Omalu opines that

> Hector's death therefore was preventable and avoidable if the cause of his critical weight loss was adequately clinically investigated, and the underlying cause of his advanced kidney disease was adequately clinically investigated. The absence of such critical clinical investigation was a significant contributory factor to the unexpected death of [Hernandez.]

Therefore, experts have opined that Nurse Lebon's failure to investigate Hernandez's weight loss was a substantial factor in his death by an underlying disease.[4] In my view, it is not necessary for that underlying disease to be explicitly identified. Such evidence is sufficient to allow the jury to decide causation under our case law—which has repeatedly instructed deference to the jury at summary judgment for such questions. *See Lemire*, 726 F.3d at 1080; *Pac. Shores Properties*, 730 F.3d at 1168; *White*, 901 F.2d at 1506.

---

[4] It is pertinent to note that we are not asked to review these opinions under *Daubert*, nor the methodologies employed to reach them. The district court's handling of Dr. Swaby and Dr. Omalu's opinions tends to suggest that it was unsatisfied with their methodology. Confusingly within one sentence, the district court acknowledges that Dr. Omalu opined that Hernandez's death was preventable and avoidable, then claims that Dr. Omalu never opined that Hernandez's kidney disease was treatable. This parsing of Dr. Omalu's opinion breaches into weighing the credibility of his ultimate opinion—which is the jury's task.

5.     Yet, even if more specificity is required, Plaintiffs' experts provide a third path to satisfy causation. Dr. Swaby opined that, upon noticing Hernandez's weight loss, the standard of care required a medical provider to conduct a "i) Detailed history, ii) Physical exam, iii) Laboratory studies, iv) and Radiological studies to include at least a chest X-ray (CXR), with the latter being especially required in light of Mr. Hernandez's medical history." And Dr. Omalu opined that if providers conducted an "adequate medical examination and basic laboratory testing of his blood, the cause of his weight loss would have been identified and treated, and his unexpected death at the age of 39-years-old would have been avoided or prevented." Therefore, experts opined that if Nurse Lebon had responded appropriately to Hernandez's weight loss, his death would have been prevented.

Of particular concern to the district court was that Dr. Omalu supposedly failed to connect his theory of death (kidney disease) to Hernandez's observable weight loss. Dr. Omalu lists different maladies that can cause unexplained weight loss. *See* Maj. at 4. The district court found no evidence of causation because according to Dr. Omalu, only "most" of those maladies are treatable. The district court and the majority ignore two important pieces of Dr. Omalu's opinion: chronic kidney disease is on that list, and Dr. Omalu's opined that Hernandez died from kidney disease. From this, a reasonable jury could find that investigating Hernandez's weight loss would have found kidney disease, the cause of the kidney

disease could have been found, each could have been treated, and Hernandez could have been saved.

It is an incredibly unfavorable reading of Dr. Omalu's opinion to create a gap in causation as the district court and the majority do. For one, courts are not competent arbiters of medical science to so stringently read against the plain language of a medical opinion. For two, this flies in the face of the summary judgment standard, which requires all justifiable inferences be made in favor of the nonmoving party. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016). Inferences from expert opinions are no exception. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 923 (9th Cir. 2015) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case." (internal quotation marks omitted)); *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) ("In this circuit, expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." (internal quotation marks and alterations omitted)).

The majority would require a pretrial detainee medical care plaintiff to prove that (1) decedent suffered from a *specific* mortal disease, (2) *specific* symptoms of that *specific* disease were apparent, (3) treating those *specific* symptoms would have

found that *specific* disease, and (4) that *specific* disease killed decedent. Causation does not require so much specificity, especially in the realm of medicine, where an individual may be suffering from myriad diseases, interrelated or not. In a case like this where deliberate indifference remains in dispute, causation requires only that the defendant's failure to provide constitutionally mandated medical care was a substantial factor in bringing about the decedent's death. Indeed, Dr. Omalu's opinion indicates that part of the reason why we do not know more about how Hernandez died is because Nurse Lebon decided not to provide constitutionally adequate medical care.

In sum, if a competent medical expert says that adequate care in the face of apparent symptoms would have discovered the mortal disease and that the death could have been prevented, the case should be submitted to the jury. Here, the district court applied its own estimation of what "medical certainty" requires, disregarded certain medical conclusions in favor of others, and mangled Plaintiffs' theory of causation to conclude they could not prove it. For these reasons, I respectfully dissent.