**A.J. NEAL, Plaintiff,**

v.

**Edwin SHIMODA, et al., Defendants.**

**Civ. No. 94–00817 ACK/FIY.**

United States District Court, D. Hawai'i.

July 27, 1995.

tracts made and performed entirely therein, and

not to its conflicts of laws."

A.J. Neal, Hilo, HI, pro se.

Kathleen Mari Sato, Office of the Attorney General, State of Hawai'i, Honolulu, HI, for defendants.

### ORDER MODIFYING IN PART AND ADOPTING IN PART THE MAGISTRATE'S FINDINGS AND RECOMMENDATION

KAY, Chief Judge.

### BACKGROUND

On October 26, 1994, A.J. Neal ("Plaintiff"), proceeding pro se, filed a 42 U.S.C. § 1983 complaint. Plaintiff complains that state prison officials have incorrectly labeled him as a "sex offender". Plaintiff alleges that his constitutional rights are being violated because, due to the "sex offender" label, he is denied a minimum security classification status, furlough and parole; he suffers mental and emotional distress; and he is recommended to participate in the Sex Offender Treatment Program ("SOTP"). In particular, Plaintiff claims that his being labeled as a sex offender violates the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, the Eighth Amendment, the Ex Post Facto Clause and the Fifth Amendment.

On December 20, 1994, Plaintiff filed a motion for summary judgment and on February 17, 1995, Defendants filed a cross motion for summary judgment. On April 24, 1995, the Magistrate Judge issued findings and a recommended that this Court GRANT Defendants' motion and Deny Plaintiff's motion.

### STATEMENT OF FACTS

On June 13, 1990, Plaintiff was indicted of several charges in Cr. No. 90–1021 in the Circuit Court of the First Circuit, State of Hawaii, including kidnapping, terroristic threatening, attempted murder and three counts of sexual assault in the first degree.

The charges arose out of the same series of events during which Plaintiff allegedly kidnapped a man during the course of committing an armed robbery and then forcibly subjected him to several sexual offenses. Plaintiff entered into a plea agreement in which he plead guilty of kidnapping, terroristic threatening and assault. The three counts of sexual assault were dismissed. In Cr. No. 90–1017, Plaintiff was again indicted of several charges including kidnapping, theft and five counts of sexual assault in the third degree. These charges arose out of a single series of events in which Plaintiff allegedly kidnapped a woman and forcibly subjected her to several sexual offenses. Plaintiff plead guilty to charges of unlawful imprisonment and theft and the five counts of sexual assault were dismissed. Plaintiff was sentenced to a maximum sentence of 25 years with a mandatory minimum of 6 years and sent to Halawa Correctional Facility, a medium security prison.

On February 14, 1994, Richard Mello ("Mello"), RAD Case Manager, completed an initial treatment plan for Plaintiff. In the plan, Mello cited Plaintiff's indictment as history of sexual deviance and recommended that Plaintiff complete the Sex Offender Treatment Program ("SOTP"). In response to Plaintiff's complaint, the administrator of SOTP, Barry J. Coyne ("Coyne") advised Plaintiff that in his opinion Plaintiff would benefit from SOTP and that participation in the program was voluntary.

On June 20, 1994, Plaintiff was denied minimum custody status at his classification review because he had not completed the SOTP. On October 19, 1994, Plaintiff's classification was reduced to a minimum custody level. Subsequently, Plaintiff was transferred from Halawa Correctional Facility to Kulani Correctional Facility, a minimum security facility on the Island of Hawaii.

### STANDARD OF REVIEW

■ Any party may object to a magistrate's case dispositive proposed order, findings, or recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 404–2. The district court must make a de novo determination of those portions of the magistrate's findings to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate. *Id. De novo* review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate's findings or recommendation to which objections are made. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

■ The court may accept those portions of the magistrate's findings and recommendation which are not objected to if it is satisfied that there is no clear error on the face of the record. *See Campbell v. United States District Court,* 501 F.2d 196, 206 (9th Cir.1974).

### DISCUSSION

### I. DUE PROCESS LIBERTY INTEREST

Plaintiff objects to the Magistrate Judge's finding that he did not have a liberty interest in housing, classification, furloughs or parole. Plaintiff also claims that he was denied due process by being labeled as a sex offender although he was not convicted, adjudged or found guilty of any sex offenses.

■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1971). In addition to liberty interests arising from the Constitution, courts have long recognized that state prison regulations may give rise to liberty interests that are protected by the Fourteenth Amendment, *Meachum v. Fano,* 427 U.S. 215, 223–227, 96 S.Ct. 2532, 2537–2539, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). However, the interest created by the regulation must be something more than freedom from the restrictions ordinarily contemplated by a

818

prison sentence. *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The interests created by state prison regulations will be "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (citations omitted).

 The Court agrees with the Magistrate Judge that a prisoner has no constitutional right to be housed at a particular institution, *Meachum*, 427 U.S. at 224, 96 S.Ct. at 2537, to receive a particular security classification, *Moody v. Daggett*, 429 U.S. 78, 87 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987), or to be released on parole, *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *See also Olim v. Wakinekona*, 461 U.S. 238, 239, 103 S.Ct. 1741, 1742, 75 L.Ed.2d 813 (prisoner does not have a protected liberty interest in being housed in an institution in his home state); *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (prisoner does not have a protected liberty interest in being in the general population of inmates rather than a more restricted segregation); *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir.1991) (prisoner does not have a protected liberty interest in being housed in a less restrictive section of a facility). Similarly, the Court finds Plaintiff has no constitutional right to furlough or in freedom from being labeled as a sex offender. Neither denial of furlough nor labeling Plaintiff as a sex offender for treatment purposes in themselves exceed Plaintiff's term of sentence in such an unexpected manner as to give rise to protection by the Due Process Clause. Moreover, that Plaintiff's sex offender classification may alter his custody level and eligibility for parole does not elevate the interest to a constitutional level as Plaintiff has neither a constitutional right to a particular custody level or being released on parole.

 The Court also finds that the prison's policies governing reclassification, custody level, furlough, parole and labeling Plaintiff as a sex offender do not create a protected liberty interest. In light of the United States Supreme Court's decision in *Sandin*, which post dates the Magistrate Judge's Findings and Recommendation, the Court finds that Defendants' labeling of Plaintiff as a sex offender and any resultant impact on Plaintiff's custody level or eligibility for parole and furlough do not impose "atypical or significant hardship" in relation to the ordinary incidents of prison life.

Because Plaintiff has no liberty interest in housing, classification, furlough, parole or not being labeled as a sex offender, Defendants are not required to provide the procedural protections guaranteed by the Due Process Clause before taking any action affecting these conditions of Plaintiff's imprisonment. Thus, the Court finds that Defendants did not violate Plaintiff's Fourteenth Amendment right to due process by labeling him as a sex offender. Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claims.

## II. *EQUAL PROTECTION*

 The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *E.g., City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3253 (1985). Unless a practice that distinguishes among classes of people provokes strict judicial scrutiny, it will typically survive an equal protection attack so long as the challenged regulation is rationally related to a legitimate governmental purpose. A state practice will not generally require strict scrutiny unless it interferes with a "fundamental right" or discriminates against a "suspect class" of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th Cir.1985). Moreover, in the context of prison practices, the state's interest in maintaining safety and security justifies interference with an inmate's fundamental rights as long as the interference reasonably furthers this goal. *Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990).

■ The SOTP does not implicate a suspect class nor impair a fundamental right. As discussed above, Plaintiff does not have a constitutional right to be housed at a particular institution, to receive a particular security classification, to be granted furlough or to be released on parole. Thus, the SOTP violates equal protection only if it bears no rational relationship to a legitimate state interest.

■ Clearly the state has a legitimate interest in protecting the public from reoffenses by sex offenders as well as maintaining safety and security within its prison system. *See Hendking v. Smith,* 781 F.2d 850, 851–52 (11th Cir.1986); *Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir.1992). Not only is sexual assault a particularly heinous crime, generally involving violence and having a devastating and long-term psychological impact on the victim. *Sex Offender Treatment—Interagency Coordination in Hawaii,* p. 1. Research has also shown that the rate of recidivism among untreated sex offenders is high being between 60–80 percent and that incarceration without treatment tends to increase the offenders' propensity to reoffend. *Id.* In contrast, when sex offenders are taught to control their aberrant desires and deviant behavior, the rate of recidivism reduces to about fifteen to twenty percent. *Id.* Moreover, obedient behavior in prison does not indicate that a sex offender has reformed. *Lustgarden v. Gunter,* 779 F.Supp. 500, 507 (D.Colo.1991). Imprisoned sex offenders are not placed in circumstances that show that they have been rehabilitated. *Id.*

Given the high probability that an untreated sex offender will commit another offense, the state's policy of denying parole, furlough and minimum security classification to untreated offenders is rationally related to the government's interest in protecting the public. Denying untreated offenders placement in minimum facilities also furthers the state's interest in maintaining safety and security in its prison facilities.

Plaintiff contends that Hawaii's Sex Offender Treatment Program violates his right to equal protection because it is overinclusive in that it includes inmates who have not actually been convicted of a sex offense. The Hawaii prison regulations define "sex offender" as an inmate "having been convicted, at any time of any sex offense or engaged in sexual misconduct during the course of an offense." 493.18.07 3.1(g). The regulations further provide that an inmate's classification as a sex offender is "generally based on the reading of the offense facts. The behavior could include a sexual assault for which the inmate was not held accountable; i.e. fondling, causing the victims to disrobe, or the threat of sexual assault." Exhibit C, Plaintiff's Objections. The Court finds that this categorization is not unconstitutionally over-inclusive. The consequences of releasing untreated sex offenders back into society is the same, regardless of whether they have been convicted of the offense. *See United States v. McDougherty,* 920 F.2d 569, 572 (9th Cir. 1990) (statute punishing those committing drug transactions near schools, was not unconstitutionally overinclusive by including transactions that did not involve children because the crimes still contributed to the "violent and dangerous criminal milieu Congress sought to eliminate."); *Marchese v. State of California,* 545 F.2d 645, 647 (9th Cir.1976) (prohibition against possession of handguns by felons was not unconstitutionally overinclusive by including those convicted of non-violent crimes because persons with criminal records have more of a tendency to commit a crime of violence than persons without criminal records.) Conviction or non-conviction obviously would not affect the rate of recidivism among untreated sex offenders.

Plaintiff argues that prison officials arbitrarily classified him as a sex offender. This argument lacks merit. Plaintiff's presentence diagnosis and report describes in detail various sex acts Plaintiff allegedly committed upon unwilling victims in conjunction with the kidnapping, terroristic threatening, assault and false imprisonment charges to which he pled guilty. These allegations are supported by statements of the victim, the Plaintiff and one of the Plaintiff's accomplices. The Grand Jury also found probable cause to indict Plaintiff of various sex offenses. Based on this information, the Court finds that prison officials did not act arbitrarily in labeling Plaintiff as a sex offender

for purposes of participation in the sex offender treatment program.

### III. *FIFTH AMENDMENT*

█ The SOTP requires that "inmates must, at a minimum, not be in denial about their crimes." Plaintiff contends that this requirement violates his Fifth Amendment right to be free from compelled testimony because it alters his eligibility for parole and thus affects an integral part of his sentence. The Ninth Circuit, however, has held that a court's consideration of a defendant's admission of guilt, or failure to admit guilt, in determining his sentence does not violate his Fifth Amendment rights. *Gollaher v. United States,* 419 F.2d 520 (9th Cir.1969). The *Gollaher* court considered rehabilitation to be an important sentencing consideration and recognized the importance of accepting responsibility for one's behavior as a first step to rehabilitation.

█ Likewise, denying Plaintiff parole or transfer to a minimum custody facility because he refuses to take the first step necessary for the sex offender treatment program does not violate his Fifth Amendment right to be free from self-incrimination. The Court also agrees with the Magistrate Judge that the SOTP does not violate Plaintiff's Fifth Amendment right because it is not a proceeding in which "the answers might incriminate him in future criminal proceedings." *See Allen v. Illinois,* 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296 (1986).

### IV. *EIGHTH AMENDMENT*

█ To establish an Eighth Amendment violation Plaintiff must establish: (1) that the deprivation was "sufficiently serious" and (2) that the officials acted with a sufficiently culpable state of mind. *Le Maire v. Maass,* 12 F.3d 1444, 1451 (9th Cir.1993). The second part of the test is not satisfied unless "the pain which has been inflicted is both unnecessary and wanton." *Id.* at 1451–52. Whether conduct can be characterized as "wanton" depends upon the constraints facing the official. Where prison officials act in response to exigent circumstances, such as the need to maintain safety and security in the prison, they will only be held to have acted wantonly where they act "maliciously and sadistically for the very purpose of causing harm." *Id.* at 1452–53 (where complaint was levelled at measured practices and sanctions used in exigent circumstances and designed to alter an inmate's manifestly murderous, dangerous, uncivilized and unsanitary conduct, wantonness consists of acting maliciously and sadistically for the very purpose of causing harm). By contrast, where officials are not balancing other important responsibilities, deliberate indifference to an inmates needs is sufficient to constitute wantonness. *Id.* at 1452 (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)) (deliberate indifference to medical needs of inmates constitutes wantonness because state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

█ In the case at bar, the SOTP which Plaintiff complains of was established to deal with the urgent problem of reoffenses by sex offenders. The program was designed to identify and treat sex offenders so as to reduce the rate of recidivism among inmates released from the system. It also requires that inmates be held in greater than minimum security and be denied furlough and parole in order to prevent their reentry into society prior to their obtaining treatment designed to reduce the probability that they will commit another sex offense. Given the importance of these concerns, this Court is inclined to find that Plaintiff must show that prison officials acted maliciously and for the very purpose of causing harm in labeling him as a sex offender to establish an Eighth Amendment violation. In any event, the Court finds that Defendants acted neither with deliberate indifference nor maliciously and sadistically. Defendants did not label Plaintiff as a sex offender in order to harm him; their intent was to treat him and enable him to control his aberrant urges upon reentry into society. Defendants desire to treat Plaintiff does not demonstrate deliberate indifference; rather it shows concern for Plaintiff's welfare.

## V. *EX POST FACTO CLAUSE*

Plaintiff claims that the requirement that he participate in Hawaii's Sex Offender Treatment Program before becoming eligible for parole or a reduced classification violates the *ex post facto* clause. Because Plaintiff is not eligible for parole until 6/5/96, Plaintiff's *ex post facto* claim is not ripe for review insofar as it pertains to any impact the SOTP may have on his eligibility for parole. Moreover, the Court finds that the prison's policy of not placing untreated sex offenders in minimum custody does not violate the *ex post facto* clause.

### A. *Parole Eligibility*

 "The ripeness doctrine prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on the parties." *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir.1989). An issue is unripe when it involves " 'contingent future events' that may not occur as anticipated or indeed not occur at all." *Id.* (quoting *Thomas Union Carbide Agric. Prods.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985)). To determine whether an issue is ripe, courts apply a two-prong test that focuses on " 'both the fitness of the issue[ ] for judicial decision, and the hardship to the parties of withholding court consideration.' " *Id.* (Quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

 Plaintiff's claim regarding the SOTP's impact on his parole eligibility is not fit for judicial review because the action he is complaining about, Defendants' denial of parole if he does not complete the program, has not yet occurred and will not occur, if at all, until June 6, 1996. Plaintiff may yet decide to participate in the treatment program. Moreover, it is not entirely clear that the interagency policy of not granting parole to untreated sex offenders is treated as a binding directive on prison officials. Indeed, prison officials have transferred Plaintiff to a minimum security facility, despite the prison's general policy of retaining untreated sex offenders in a higher security facility. The Court notes that the policy provides that "inmates who have not participated in a formal treatment program because of a lack of treatment space will be considered for parole on a case by case basis by the parole board." Accordingly, at this time the impact of the SOTP on Plaintiff's eligibility for parole is wholly speculative.

Applying the hardship factor, the Court concludes that withholding court review causes no hardship to Plaintiff. He has not suffered any harm because he might be denied parole sometime in the future. Plaintiff will have adequate opportunity to raise this claim if and when he is actually denied parole based on his refusal to participate in the treatment plan.

### B. *Classification/Transfer*

 Article I of the Constitution provides that neither Congress nor any state shall pass any *ex post facto* laws. U.S. Const. art. I, § 9, cl. 3, art. I, § 10, cl. 1. *Ex post facto* laws are laws that change the punishment, and inflict a greater punishment, than the law annexed to the crime, when it was committed. *United States v. Paskow*, 11 F.3d 873, 876–77 (9th Cir.1993) (citing *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1788)). Only laws which are enacted for a punitive purpose are said to be *ex post facto*. *Flemming v. Nestor*, 363 U.S. 603, 613–14, 80 S.Ct. 1367, 1373–74, 4 L.Ed.2d 1435 (1960); *Peeler v. Heckler*, 781 F.2d 649, 651 (8th Cir.1969). "If the law in question is focused on the past crime, then it is likely intended as a punishment, while if the focus is upon the benefit from which the person is barred, it is not, even though the impact on the individual may be harsh."

 To make an ex post facto claim, a defendant must show that: (1) the challenged action is a "law;" (2) the law is retrospective, i.e., it must apply to events occurring before its enactment; and (3) the law is detrimental. *Nulph v. Faatz*, 27 F.3d 451, 455 (9th Cir. 1994). A defendant can satisfy the detriment requirement by showing either that "the new scheme, taken as a whole is disadvantageous to defendants," or that "it can be said with assurance that [the defendant] would have received less severe punishment under the prior scheme." *Id.* at 455–56. The first

inquiry looks to the challenged provision and not to any special circumstances that may mitigate its effect on the particular individual. *Chatman v. Marquez*, 754 F.2d 1531 (9th Cir.), cert. denied, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). The second method of proving detriment focuses on the individual.

 The Hawaii Sex Offender Treatment Program ("SOTP") was established by H.R.S § 353E–1 (effective June 8, 1992). This statute provides that the Department of Human Services, the Judiciary, the Hawaii Paroling Authority, the Department of Corrections, the Health Center and any other agency that might be assigned sex offender oversight responsibilities work together to develop and implement a statewide, integrated program for identification and treatment of sex offenders in the custody of the state. These agencies, motivated by the common goal of protecting the public from reoffenses by sex offenders identified in the system, had previously pooled resources to develop a master plan for sex offender treatment. *Sex Offender Treatment—Interagency Coordination in Hawaii*, p. 2 (1991). As part of the interagency agreement, the Hawaii Paroling Authority ("HPA") signed a paroling agreement that included the following provisions:

> To be eligible for parole, an inmate must have an assessment (includes physiological portion), and completed the 25 week relapse prevention psychoeducational group in the institution, unless otherwise noted in the assessment report i.e., previous treatment exposure.
>
> Inmates with histories of sexual offenses must be advised by their case managers that, as a matter of HPA policy, they will not be eligible for parole release until they have been assessed, and have satisfactorily participated in a *minimum* of 25 weeks of core relapse prevention group. Participation does not insure parole. The more serious the offense history, the more intensive and long-term the institutional treatment.
>
> Following assessment, inmates will be offered an opportunity to participate in available treatment programs, approved by Administrator of Sex Offender Programs.

> Inmates must, at a minimum, not be in denial about their crimes.
>
> Inmates who have not participated in a formal treatment program because of a lack of treatment space will be considered for parole on a case by case basis by the parole board.

Sex Offender Treatment Program, Parole Agreement.

The Magistrate Judge held that the sex offender treatment program does not violate the *ex post facto* clause because it was created to treat inmates, not to punish them. *See Russell v. Eaves*, 722 F.Supp. 558, 560 (E.D.Mo.1989). The prison's policy of requiring inmates to complete the treatment program before being eligible for transfer to a reduced classification facility from which they might more easily escape furthers the program's goal of protecting the public from reoffenses by sex offenders. The policy also furthers safety within reduced security facilities. The Court also finds that the policy against transfer of untreated sex offenders is not a law for *ex post facto* purposes. The Court notes initially that Plaintiff has no constitutional right to a particular classification. *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 844 (9th Cir.1985). There is no written policy mandating that sex offenders who have not completed a treatment program be placed in a higher custody level. Rather, policy 493.18.01 simply requires that inmates receive "mental health clearance" before being placed in a minimum security facility. Dept. of Public Safety, Policies & Procedures Manual, Policy No. 493.18.01. This regulation does not serve as a binding constraint on prison officials, but merely operates to guide the official's exercise of discretion in placing inmates in appropriate housing. Indeed, although Plaintiff has not completed the sex offender treatment program, prison officials have transferred him to a minimum security facility. *See, Smith v. United States Parole Commission*, 875 F.2d 1361, 1367 (9th Cir.1989) ("the operative factor in assessing whether a directive constitutes a 'law' for *ex post facto* purposes is the discretion that the Parole Commission retains to modify that directive").

The Court has also reviewed the Magistrate's findings and recommendation regarding sovereign immunity and agrees that the State of Hawaii and the State officials, in their official capacity, are entitled to such immunity. Likewise, the Court agrees that the State officials sued in their individual capacity are protected by qualified immunity. The Court has found that Defendants did not violate Plaintiff's constitutional rights. Alternatively, any rights which may have been violated are not clearly established.

### CONCLUSION

For the foregoing reasons, the Court MODIFIES in part and ADOPTS in part the Magistrate's findings and recommendation. Plaintiff's motion for summary judgment is hereby DENIED and Defendants' motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.