[NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 96-2039

 RICHARD RILEY, ET AL.,

 Plaintiffs, Appellants,

 v.

 LARRY E. DUBOIS,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Stahl and Lynch, Circuit Judges. 

 

Christopher Masonoff, Sr., John Tarrant and Charles Mitchell on 
brief pro se.
Nancy Ankers White, Special Assistant Attorney General, and 
William D. Saltzman, Department of Correction, on brief for appellee. 

 

 October 14, 1997
 

 Per Curiam. In 1994, the Massachusetts Commissioner of 

Correction promulgated a "sex offender treatment" program

("the program"), see 103 DOC 446, designed to provide 

treatment for those inmates "with a present indication or

prior history of involvement in the commission of sex

offenses," id. 446.07. With a sequential series of 

treatment phases, first at the medium-security level and then

in minimum-security and pre-release settings, the program is

intended to offer "a continuum of service from the time an

inmate with such a background is committed, until he/she is

released to the community, and hopefully beyond." Id. While 

the program is voluntary, any inmate who declines to

participate (or who has not completed the initial treatment

stages) is barred from moving beyond minimum security. See 

Dominique v. Weld, 73 F.3d 1156, 1161 n.8 (1st Cir. 1996) 

(discussing program).

 The plaintiffs here are four inmates who have declined

to participate in the program, allegedly out of fear of

retribution from other prisoners should their sex-offender

status become known. They have accordingly been confined to

medium security with a consequent loss of privileges.

Plaintiff Tarrant further complains that he has been denied

parole as a result, while plaintiff Masonoff protests that

his parole reserve date has been rescinded. All of the

plaintiffs committed their offenses before the program was

 -2-

introduced. Three of them were allegedly screened and

"cleared" under an earlier regime calling for the indefinite

civil commitment of "sexually dangerous persons." See Mass. 

G. L. c. 123A. 

 In this pro se action under 42 U.S.C. 1983, plaintiffs

insist that applying the program to them is impermissible on

a variety of constitutional and other grounds. Declaratory

and injunctive relief and damages are sought; the

Commissioner of Correction is the sole named defendant. From

an adverse award of summary judgment, plaintiffs now appeal.

We affirm.

 Extended discussion is unnecessary. Plaintiffs'

principal contention, which underlies many of their claims,

is that it is improper to subject them to the program after

they had been cleared under the c. 123A regime. In their

view, the program is simply a "mirror image"--a revamped

version--of the c. 123A system, which could not be applied to

them absent some intervening sexual misconduct. They argue

that doing so violates notions of due process, equal

protection, ex post facto law, res judicata and collateral

estoppel. We disagree. The two regimes share nothing more

than a common purpose of treating sex offenders. Whereas c.

123A involves involuntary and indeterminate civil commitment

based upon a judicial finding of sexual dangerousness, the

program involves a voluntary treatment scheme that can affect

 -3-

a prisoner's classification level but does not alter his

underlying criminal sentence. That one has previously been

determined not to be a "sexually dangerous person" under c.

123A thus does not preclude subjecting him to the program. 

 Applying the program to plaintiffs does not otherwise

violate due process. Imposing limitations on a prisoner's

access to minimum security entails no "atypical and

significant hardship" under Sandin v. Conner, 515 U.S. 472, 

484 (1995). See, e.g., Dominique, 73 F.3d at 1158-61 

(finding prisoner's removal from work release and restriction

to medium security to be permissible under Sandin). Nor is 

due process implicated by the denial of parole, see, e.g., 

Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979), 

or by the rescission of a parole reserve date, see, e.g., 

Jago v. Van Curen, 454 U.S. 14 (1981) (per curiam); Lanier v. 

Massachusetts Parole Bd., 396 Mass. 1018 (1986) (rescript). 

Plaintiffs' equal protection claim is also misplaced; sex

offenders are not a suspect class, see, e.g., Lustgarden v. 

Gunter, 966 F.2d 552, 555 (10th Cir. 1992), and a treatment 

program such as this is rationally related to the legitimate

state interest in protecting public safety, see, e.g., Neal 

v. Shimoda, 905 F. Supp. 813, 819 (D. Haw. 1995); see also 

Martel v. Feidovich, 14 F.3d 1, 2-3 (1st Cir. 1994) (per 

curiam). Nor does the program constitute a bill of

 -4-

attainder. See, e.g., Schafer v. Moore, 46 F.3d 43, 45 (8th 

Cir. 1995).

 As to whether the program might constitute an ex post

facto violation by resulting in the deferral or denial of

parole (or of a parole hearing), we need express no general

view.1 At least one court has held, albeit in a case 1

predating California Dep't of Corrections v. Morales, 514 

U.S. 499 (1995), that conditioning parole on an inmate's

participation in a sex offender treatment program can violate

the Ex Post Facto Clause. See Parton v. Armontrout, 895 F.2d 

1214, 1215-16 (8th Cir. 1990); cf. Knox v. Lanham, 895 F. 

Supp. 750, 756-58 (D. Md. 1995) (invalidating restrictions on

parole eligibility for "lifers"). Contra Russell v. Eaves, 

722 F. Supp. 558, 560 (E.D. Mo. 1989), appeal dismissed, 902 

F.2d 1574 (8th Cir. 1990). Yet plaintiffs have presented no

direct claim that this is what happened here; indeed, the

interplay between the program and the parole system is

unexplained on the present record. Nor, in the course of

their ex post facto discussion, have they referred to parole

in anything more than oblique fashion--either below or on

appeal. Plaintiffs bore the burden of establishing an ex

post facto violation. See Morales, 514 U.S. at 510 n.6. It 

  

 1 Contrary to defendant's suggestion, our Dominique 1 
decision does not appear to address this issue, much less
"foreclose" it. There is no indication that any complaint
was there voiced regarding the program's effect on parole
eligibility.

 -5-

suffices here to conclude that the minimal facts they have

adduced and the perfunctory arguments they have advanced fall

short of doing so. 

 Plaintiffs' remaining claims are rejected for the

reasons recited by the district court (or because they

require no separate comment). 

 Affirmed. 

 -6-