USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2039 RICHARD RILEY, ET AL., Plaintiffs, Appellants, v. LARRY E. DUBOIS, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ Christopher Masonoff, Sr., John Tarrant and Charles Mitchell on __________________________ ____________ _________________ brief pro se. Nancy Ankers White, Special Assistant Attorney General, and ____________________ William D. Saltzman, Department of Correction, on brief for appellee. ___________________ ____________________ October 14, 1997 ____________________ Per Curiam. In 1994, the Massachusetts Commissioner of ___________ Correction promulgated a "sex offender treatment" program ("the program"), see 103 DOC 446, designed to provide ___ treatment for those inmates "with a present indication or prior history of involvement in the commission of sex offenses," id. 446.07. With a sequential series of ___ treatment phases, first at the medium-security level and then in minimum-security and pre-release settings, the program is intended to offer "a continuum of service from the time an inmate with such a background is committed, until he/she is released to the community, and hopefully beyond." Id. While ___ the program is voluntary, any inmate who declines to participate (or who has not completed the initial treatment stages) is barred from moving beyond minimum security. See ___ Dominique v. Weld, 73 F.3d 1156, 1161 n.8 (1st Cir. 1996) _________ ____ (discussing program). The plaintiffs here are four inmates who have declined to participate in the program, allegedly out of fear of retribution from other prisoners should their sex-offender status become known. They have accordingly been confined to medium security with a consequent loss of privileges. Plaintiff Tarrant further complains that he has been denied parole as a result, while plaintiff Masonoff protests that his parole reserve date has been rescinded. All of the plaintiffs committed their offenses before the program was -2- introduced. Three of them were allegedly screened and "cleared" under an earlier regime calling for the indefinite civil commitment of "sexually dangerous persons." See Mass. ___ G. L. c. 123A.  In this pro se action under 42 U.S.C. 1983, plaintiffs insist that applying the program to them is impermissible on a variety of constitutional and other grounds. Declaratory and injunctive relief and damages are sought; the Commissioner of Correction is the sole named defendant. From an adverse award of summary judgment, plaintiffs now appeal. We affirm. Extended discussion is unnecessary. Plaintiffs' principal contention, which underlies many of their claims, is that it is improper to subject them to the program after they had been cleared under the c. 123A regime. In their view, the program is simply a "mirror image"--a revamped version--of the c. 123A system, which could not be applied to them absent some intervening sexual misconduct. They argue that doing so violates notions of due process, equal protection, ex post facto law, res judicata and collateral estoppel. We disagree. The two regimes share nothing more than a common purpose of treating sex offenders. Whereas c. 123A involves involuntary and indeterminate civil commitment based upon a judicial finding of sexual dangerousness, the program involves a voluntary treatment scheme that can affect -3- a prisoner's classification level but does not alter his underlying criminal sentence. That one has previously been determined not to be a "sexually dangerous person" under c. 123A thus does not preclude subjecting him to the program.  Applying the program to plaintiffs does not otherwise violate due process. Imposing limitations on a prisoner's access to minimum security entails no "atypical and significant hardship" under Sandin v. Conner, 515 U.S. 472, ______ ______ 484 (1995). See, e.g., Dominique, 73 F.3d at 1158-61 ___ ____ _________ (finding prisoner's removal from work release and restriction to medium security to be permissible under Sandin). Nor is ______ due process implicated by the denial of parole, see, e.g., ___ ____ Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979), __________ _______________________ or by the rescission of a parole reserve date, see, e.g., ___ ____ Jago v. Van Curen, 454 U.S. 14 (1981) (per curiam); Lanier v. ____ _________ ______ Massachusetts Parole Bd., 396 Mass. 1018 (1986) (rescript). ________________________ Plaintiffs' equal protection claim is also misplaced; sex offenders are not a suspect class, see, e.g., Lustgarden v. ___ ____ __________ Gunter, 966 F.2d 552, 555 (10th Cir. 1992), and a treatment ______ program such as this is rationally related to the legitimate state interest in protecting public safety, see, e.g., Neal ___ ____ ____ v. Shimoda, 905 F. Supp. 813, 819 (D. Haw. 1995); see also _______ _________ Martel v. Feidovich, 14 F.3d 1, 2-3 (1st Cir. 1994) (per ______ _________ curiam). Nor does the program constitute a bill of -4- attainder. See, e.g., Schafer v. Moore, 46 F.3d 43, 45 (8th ___ ____ _______ _____ Cir. 1995). As to whether the program might constitute an ex post facto violation by resulting in the deferral or denial of parole (or of a parole hearing), we need express no general view.1 At least one court has held, albeit in a case 1 predating California Dep't of Corrections v. Morales, 514 ________________________________ _______ U.S. 499 (1995), that conditioning parole on an inmate's participation in a sex offender treatment program can violate the Ex Post Facto Clause. See Parton v. Armontrout, 895 F.2d ___ ______ __________ 1214, 1215-16 (8th Cir. 1990); cf. Knox v. Lanham, 895 F. ___ ____ ______ Supp. 750, 756-58 (D. Md. 1995) (invalidating restrictions on parole eligibility for "lifers"). Contra Russell v. Eaves, ______ _______ _____ 722 F. Supp. 558, 560 (E.D. Mo. 1989), appeal dismissed, 902 ________________ F.2d 1574 (8th Cir. 1990). Yet plaintiffs have presented no direct claim that this is what happened here; indeed, the interplay between the program and the parole system is unexplained on the present record. Nor, in the course of their ex post facto discussion, have they referred to parole in anything more than oblique fashion--either below or on appeal. Plaintiffs bore the burden of establishing an ex post facto violation. See Morales, 514 U.S. at 510 n.6. It ___ _______  ____________________ 1 Contrary to defendant's suggestion, our Dominique 1 _________ decision does not appear to address this issue, much less "foreclose" it. There is no indication that any complaint was there voiced regarding the program's effect on parole eligibility. -5- suffices here to conclude that the minimal facts they have adduced and the perfunctory arguments they have advanced fall short of doing so.  Plaintiffs' remaining claims are rejected for the reasons recited by the district court (or because they require no separate comment).  Affirmed. _________ -6-